UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JONI CLAVILLE, M.D. | * | CIVIL ACTION |
|         PLAINTIFF | * | |
| | * | NO. |
|       VERSUS | * | |
| | * | JUDGE |
| WILLIS-KNIGHTON MEDICAL CENTER, | * | |
| ET AL | * | |
|         DEFENDANTS | * | MAG. JUDGE |
| | * | |
| | * | |
| *    *    *    *    *    *    *    * | | |

**COMPLAINT**

NOW COMES INTO COURT, through the undersigned counsel, Joni Claville, M.D. ("plaintiff") who for his Complaint, respectfully represents that:

1.

Joni Claville, M.D. (hereinafter "plaintiff" or "Dr. Claville"), plaintiff herein, is a person of the age of majority and domiciled within the State of Louisiana, Parish of Caddo.

2.

Made defendant herein is Willis-Knighton Medical Center (hereinafter "Willis-Knighton"), an a Louisiana non-profit corporation, upon information and belief, which is domiciled in the Parish of Caddo, State of Louisiana.

3.

Made defendant herein is the Willis-Knighton medical staff (hereinafter "WKMS"), upon information and belief an unincorporated association in the Parish of Caddo, State of Louisiana,

consisting of all credentialed medical care providers with staff privileges at Willis-Knighton Medical Center.

4.

Made defendant herein is Cross Lake Emergency Group, LLC (hereinafter "Cross Lake"), a domestic Louisiana limited liability company domiciled in the Parish of Lafayette, State of Louisiana

5.

Made defendant herein is The Schumacher Group of Louisiana, Inc. (hereinafter "Schumacher"), a domestic Louisiana business corporation domiciled in the Parish of Lafayette, State of Louisiana.

6.

At all times relevant to this matter Dr. Claville was a board certified emergency medicine physician, licensed to practice medicine in the State of Louisiana.

7.

Prior to joining the Willis-Knighton medical staff never had any action taken against her medical privileges.

8.

Dr. Claville directly contracted with Cross Lake to provide physician services in the ED of Willis-Knighton at its Willis-Knighton North location on Greenwood Road in Shreveport.

9.

Upon information and belief, Cross Lake is both owned and controlled by Schumacher. Specifically, it is alleged that the level of control, overlap of personnel and functions, intermingling of contracts and accounting, and disregard of the Cross Lake corporate entity in

business functions is such that Cross Lake is actually and alter ego of Schumacher and the corporate veil of protection otherwise provided by Cross Lake's corporate status should not be afforded to Schumacher.

10.

Dr. Claville joined Willis-Knighton's medical staff effective August 27. 2019.

11.

By virtue of Dr. Claville joining the WKMS she both became subject to the Medical Staff Bylaws and gained a contractual right of due process with regard to any action taken against her WKMS staff privileges.

12.

After she started working as an ER physician Dr. Claville was informed that there were complaints concerning the care she provided to patients in the Emergency Department.

13

Dr. Claville's actions were considered by the Peer Review committee of Willis-Knighton, which determined that she had provided care that was within the standard of care and that no further action needed to be taken by the QC process.

14.

Dr. Claville worked her last shift as an ED physician at Willis-Knighton on August 31, 2020.

15.

Dr. Claville was removed from the ED physician schedule on September 2, 2020. At that time or shortly thereafter she was informed that the removal from the schedule was related to complaints by patients.

16.

Prior to her removal from the Willis-Knighton North ED schedule, Dr. Claville was told by a Cross Lake/Schumacher manager or executive that she should consider transfer to a different Willis-Knighton location in a predominantly African-American part of the Shreveport metropolitan area on the grounds that she could better communicate or relate to the patients in that ER and which had a lower patient count.

17.

Following her removal from the schedule, Dr. Claville was directed to attend an examination by a psychiatrist. Dr. Claville attended that examination and was cleared by the psychiatrist.

18.

By correspondence dated December 28, 2020, Dr. Claville was informed that the Medical Executive Committee of WK had recommended revocation of her medical privileges, asserting that Dr. Claville had provided unacceptable patient care, a recurrent pattern of complaints by patients, and concerns with alleged inability to practice safely in a high volume, high acuity emergency department setting.

19.

Within the thirty (30) day period set forth in the correspondence as the deadline for Dr. Claville to seek a hearing, Dr. Claville, via correspondence of counsel, requested a hearing before a Hearing Committee pursuant to the procedural provisions of the WK Staff Bylaws.

20.

What followed the initial demand by Dr. Claville for a hearing was a lengthy series of delay, obstruction, and maneuvering by counsel for the hospital and/or medical staff designed to

delay hearing on her medical privileges and make it less likely that she could successfully defend herself.

21.

In February of 2022, Dr. Claville learned that a National Practitioner Databank entry had been made against her by WK. At the same time WK had still not forwarded the forms to allow for Dr. Claville's experts to be allowed to legally review the chart material. Additionally, Dr. Claville had requested potential hearing dates and was still waiting for potential hearing dates from WK's counsel.

22.

On March 12, 2022, WK finally sent the forms for Dr. Claville's experts to sign which would allow them legal access to the patient chart material. Prior to this time it would not have been possible to legally prepare Dr. Claville's experts to testify at a committee meeting. By March 31, 2022, the forms had been distributed to the relevant experts, executed, and returned to counsel for WK.

23.

On April 6, 2022, WK finally shared the patient chart material with Dr. Claville through counsel with the understanding that it would be bates numbered and shared with experts for Dr. Claville in order for her hearing position to be prepared.

24.

Dr. Claville continued preparation and had her experts prepare for hearing. Not having heard from WK counsel, on November 15, 2022, counsel for Dr. Claville wrote to WK counsel inquiring as to dates for hearing.

25.

A hearing date was set for April 14, 2023, but due to delay on the part of WK and/or the hearing officer in confirming the date, it became impossible for Dr. Claville's experts to hold the date open on their calendars. On March 31, 2023, counsel for WK wrote that the April 24, 2023 hearing date was no longer viable.

26.

On April 13, 2023, WK counsel wrote that the hearing could be held on the evening of June 20, 2023. The undersigned had a direct conflict on that date, to wit prepaid international travel, and notified WK counsel, also requesting that some potential dates be provided with sufficient notice to allow for the coordination of dates on counsel's calendar and/or the calendar of relevant experts.

27.

On May 26, 2023, counsel for Dr. Claville wrote to counsel for WK, noting that the initial delays were due to the issues with obtaining access to patient chart material and demanding a reasonable hearing date for Dr. Claville to finally have due process in the form of notice and opportunity to be heard after having been given access to the relevant evidence.

28.

After Dr. Claville was allowed to distribute patient chart material to her experts she has only been offered two hearing dates prior to the eventual actual hearing date. The first, was April 14, 2023, which was not confirmed by WK in time for Dr. Claville to lock in availability for her experts. The second, June 20, 2023, was unilaterally selected by WK and directly conflicted with the undersigned's schedule. (Additionally, it may have conflicted with expert schedules, but as counsel was unavailable the experts were not consulted on their schedules.) Thus, prior to the

provision and distribution of patient chart material to experts WK was more than willing to provide a hearing date with reasonable advance notice and confirmation, all in coordination with the calendar of counsel for Dr. Claville. Once WK knew that Dr. Claville had obtained substantial expert testimony supported by review of the patient charts, WK began to avoid providing a hearing date with reasonable notice, including the coordination of the date with the availability of counsel for Dr. Claville. Thus, WK by its actions consistently denied Dr. Claville due process.

29.

Dr. Claville appealed the National Practitioner Databank entry, but her request for removal of the data was denied. She was informed by correspondence dated October 21, 2021 that due to the delay in her appeal of the NPDB entry, caused by her not being informed of the submission by WK, that it could not be removed unless she had a hearing and was cleared with respect to the allegations she had provided substandard care, which was the basis for the privileges action.

30.

Dr. Claville has sought alternative employment in an effort to mitigate her damages, but potential employers who had expressed interest and/or actually made a job offer to her lose interest upon learning of the National Practitioner Databank entry. In short, the denial of due process has effectively ended her opportunities to work as a board certified emergency. In particular, Dr. Claville also sought employment through Schumacher and/or Cross Lake with any other position they might have open, but she was told that she would not receive any employment through those entities.

31.

On September 18 and 19, 2023, Dr. Claville received a hearing before a hearing committee made up of three physicians.

32.

During the course of the September 18 and 19, 2023 proceedings there were several events which constituted due process violations. These included the submission of evidence or testimony which was insufficient, demonstrably false, and in one instance a physical impossibility given the design of the medical device used in the procedure.

33.

During the September 18 and 19, 2023 proceedings the evidence did not demonstrate any actual harm to patients, and to the extent that any patient harm might have occurred it was minor and outweighed by the benefit of the relevant emergent test, evaluation, procedure, or treatment.

34.

Defendants WKMS and Willis-Knighton have historically declined to pursue staff privilege actions against Caucasian physicians with privileges at Willis-Knighton who, based upon final judgments resulting from both trial court proceedings and reported opinions, engaged in acts of substandard medical practice which result in disability and/or death of the patient.

35.

All defendants, at all relevant times, knew that maintenance of medical staff privileges with WKMS was necessary for Dr. Claville to work at Willis-Knighton on the Cross Lake employment contract.

36.

**COUNT 1**

The foregoing constitutes a violation by all defendants of 42 U.S.C.A. §1981 in that Dr. Claville's right to "make and enforce" contracts, including the employment contract with Cross Lake and the contract formed by her joining the WKMS, both independently and jointly, was impaired on the basis of race.

37.

## COUNT 2

The foregoing constitutes a violation by Willis-Knighton and/or WKMS of Dr. Claville's due process rights under the HCQIA, 42 U.S.C.A. §11101 *et seq.*

38.

## COUNT 3

The foregoing constitutes a bad faith breach by all defendants of contracts, including the employment contract with Cross Lake and the contract formed by her joining the WKMS, both independently and jointly, was impaired on the basis of race.

39.

## COUNT 4

The prosecution of the privileges action against Dr. Claville, in particular the hearing committee hearing in September of 2023, constitutes a violation of the Louisiana Unfair Trade Practices Act.

40.

Venue is proper in this Honorable Court pursuant to 28 U.S.C. §1391.

41.

This Honorable Court has jurisdiction over the claims asserted in this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. §1367.

**WHEREFORE,** Joni Claville, M.D., prays that, due proceedings be had and that there be judgment herein in favor of Joni Claville, M.D. and against WK, defendant, for such sums as the Court should deem reasonable and proper, including general damages, special damages, consequential damages, contractual breach damages, bad faith breach of contract damages, backpay, frontpay, and lost wages, together with legal interest thereon from date of judicial demand until paid, plus all costs of these proceedings as defined or provided for by the Federal Rules of Civil Procedure, and for such other legal and equitable relief as the Court shall deem necessary and proper. Plaintiff also prays for a declaratory judgment that WK and WKMS has failed to provide due process and that WK and WKMS must direct the National Practictioner Databank to remove the entry pertaining to the removal or termination of privileges against Dr. Claville.

Respectfully Submitted,


    s/Donald L. Hyatt, II
DONALD L. HYATT, II (24808)
DONALD L. HYATT, II APLC
1217 Florida Street
Mandeville, LA 70448
Telephone: (504) 813-6727
Facsimile: (866) 377-8671
E-mail: hyattlaw@aol.com
***COUNSEL FOR THE PLAINTIFF,
JONI CLAVILLE, M.D.***